LAWRENCE BARNETT, ADMR., APPELLANT, v. E. W. COUEY, ADMR., RESPONDENT.

Kansas City Court of Appeals. May 5, 1930.

*Barnett & Hayes* for appellant.

*D. E. Kennedy,* and *Shain & O'Bannon* for respondent.

ARNOLD, J.—This is an action in equity brought by plaintiff, as the administrator of the estate of Cora Washington, deceased, whereby he seeks to have defendant, as administrator of the estate of James Washington, deceased, declared trustee of one-half the proceeds of certain bank deposits. Said deceased persons were husband and wife and formerly owned said deposits as an estate by the entirety.

A demurrer was sustained to the petition filed by plaintiff, and upon his refusal to plead further, the cause was dismissed. From this judgment of dismissal plaintiff has duly appealed.

Since the controversy arises as to the sufficiency of the petition, and the court's action in sustaining the demurrer thereto, the charging part of the petition is here set forth as follows:

"Comes now the plaintiff and states that he was on the 18th day of June, 1929, duly appointed the administrator *pendente lite* of the estate of Cora Washington, deceased, by the probate court of Pettis county, Missouri, and that he has duly qualified and is now acting as such administrator; that the defendant was duly appointed administrator of the estate of James Washington, deceased, by the probate court of Pettis county, Missouri, and has qualified and is now acting as such administrator.

"Plaintiff states that Cora Washington and James Washington were married to each other on the 18th day of May, 1925, and that thereafter they lived together as husband and wife until the time of the death of the said Cora Washington; that on or about the evening of March 10, 1929, the said James Washington, her husband, willfully and without justifiable cause murdered the said Cora Washington, his wife, that he survived her and thereafter committed suicide; that the said Cora Washington, at the time she was murdered by her husband, was twenty-five years old and that the said James

Washington at said time was twenty-nine years old and that the said Cora Washington, because of said fact, had a greater expectancy of life than did the said James Washington.

"The plaintiff further states that, for a long time prior to the death of the said Cora Washington, the said Cora Washington and the said James Washington, husband and wife, owned jointly as tenants by the entirety certain property and that at the time the said James Washington murdered the said Cora Washington, that the said James Washington and the said Cora Washington, husband and wife, owned jointly as tenants by the entirety a bank deposit in the Sedalia National Bank of Sedalia, Missouri, of the value of $2,074.85, and a bank account in the Citizens' National Bank of Sedalia, Missouri, of the value of $1000; that the said James Washington murdered the said Cora Washington and after the death of the said James Washington that the defendant, the administrator of the estate of James Washington, took possession of all funds in both of said bank accounts and inventoried said funds as being the sole property of the estate of James Washington, deceased, and now claims all of said funds.

"The plaintiff further states that the said Cora Washington had a greater expectancy of life than the said James Washington and that the said James Washington by reason of his murder of the said Cora Washington, enriched himself and came into possession and control of all of said funds and that the legal title to said funds is now in his administrator, the defendant; that in equity and good conscience, the said James Washington and those claiming under him ought not to be permitted to enrich himself and themselves by reason of the murder by James Washington of his said wife, and the said James Washington and those claiming under him ought not to be permitted to profit by his wrong, and ought not in equity and good conscience be permitted to retain all of the funds owned by the said James Washington and Cora Washington as tenants by the entirety during their lifetime; that the said Cora Washington left surviving her an heir and that in equity and good conscience the defendant is and should be a constructive trustee for the benefit of the estate of the said Cora Washington, deceased, and plaintiff should be and is entitled to one-half the said funds which the said James Washington wrongfully acquired and that the interest of the plaintiff in the funds of which the defendant should be trustee amounts to $1537.42."

The petition concludes with a prayer that the defendant be declared a constructive trustee for the benefit of the estate of Cora Washington, deceased, to the extent of $1537.42 and that an order be made requiring him to account for any pay over to the plaintiff, as administrator, *pendente lite*, the said sum of money.

As reasons for his demurrer, defendant pleaded as follows:

"First: Because the facts set forth in said petition constitute no cause of action against the defendant.

"Second: For the reason that the facts stated in said petition constitute no cause of action in favor of plaintiff and under the facts stated therein he is not entitled to the relief prayed for.

"Third: Because under the facts stated in the petition and the law, plaintiff is not entitled to any part of the estate of James Washington, deceased, and now in possession of this defendant, and as described in plaintiff's petition.

"Fourth: Because under the facts stated in the petition and under the law, the property in the hands of this defendant, after the payment of debts, should be distributed to the heirs at law of James Washington, deceased."

In addition to the facts admitted of record by the pleadings filed, counsel for defendant, in their brief, frankly concede James Washington wrongfully killed his wife and immediately afterward committed suicide; that, as administrator of the estate of said deceased husband, defendant took charge of all the funds formerly held by said husband and wife as an estate by the entirety. The exact question presented for our determination under the pleadings and admitted facts conceded of record is, whether a husband, wilfully killing his wife, may become, as survivor, the sole and unconditional owner of an estate by the entirety so that he, or those claiming under him, may have and enjoy the full benefit thereof. Or, as expressed by counsel for defendant, is a court of equity authorized to impress a trust thereon, to the extent of one-half of said estate, in favor of the heirs at law of such deceased co-tenant by entirety. The issue here presented has never been ruled upon in this State, so far as we are able to determine. In considering the matter submitted to the trial court sitting as a chancellor, and now before us for review, in the light of the circumstances indicated, certain well-settled equitable rules and principles should be recognized, to-wit: (1) No one shall be permitted to profit by his fraud, or wrong. (2) Neither shall he be permitted to found any claim his own iniquity, nor acquire property by his own crime. If, therefore, application of these rules be permitted in the instant case, the principles underlying them should be followed.

Defendant in his brief directs our attention to the caess of Garner v. Jones, 52 Mo. 68; Brewing Company v. Saxy, 273 Mo. 159, 162, 201 S. W. 67; Wimbush v. Danford, 292 Mo. 588, 238 S. W. 466; Willson v. Frost, 186 Mo. 311, 319, 85 S. W. 375; Frost v. Frost, 200 Mo. 474, 481, 98 S. W. 527, in support of his argument that each owns the whole estate and the survivor takes all, in any event of the decease of the cotenant by the entirety, without exception. He further argues that to grant plaintiff the relief sought would operate as a bill of attainder or forfeiture of the survivor's estate. On the

contrary, plaintiff asserts this bill in equity was not brought for the purpose of causing James Washington or his heirs to forfeit any part of his estate because of the crime, but rather to prevent James Washington and his heir from enriching themselves as a result of his criminal act. The power of a court of equity is invoked to declare a resultant or constructive trust not for the entire estate, but for one-half of the fund in question.

We have carefully read the authorities cited by defendant but are not persuaded they are applicable, and they do not purport to pass on the direct question here presented. The effect of what they hold, under the facts recited, is clearly distinguishable from the present case and the theory upon which plaintiff seeks relief. It is not intended by our conclusions to question the well settled principles of law governing the creation and incidents of an estate by the entirety. We merely say that the ordinary rules of construction and operation do not extend to, or have within their contemplation, a survivorship which arises by a wrongful, illegal and felonious homicide committed by such survivor who, and those under him, may claim all the entirety estate. The principles generally governing such estates at common law must receive a reasonable interpretation consonant with the apparent object and plain intent of their creation. Unless we do violence to the well recognized equitable maxims quoted above, we must hold, as we do, that no beneficial property rights may result to one guilty of felonious homicide, regardless of the legal fiction that the husband and wife are a unit, and that each owns the entire estate.

In this connection defendant likens the situation here presented to the questions ruled upon in the cases cited by him, noted above. Further pursuing that line of reasoning he attempts the conclusion that plaintiff herein has no cause of action, notwithstanding the facts pleaded in the petition and admitted of record clearly differentiate those cases from the one at bar. We cannot agree the situations are analogus, or that a fair construction of the fiction of unity there approved calls for a similar conclusion here. The fiction of ownership does not begin or end with the creation of an estate by the entirety, but requires before such beneficial right may flow to the survivor, the determination thereof by death in the ordinary course of events, as we have previously stated. Such fiction of complete ownership in the whole of the entirety property the courts of this State have repeatedly declared must give way when equitable principles intervene. Then individual interests are defined and declared.

For illustration, it is held where the two tenants by entirety are divorced, the fiction is destroyed. They become and are considered tenants in common, each owning an undivided one-half interest in the property. [State ex rel. v. Ellison, 290 Mo. 28, 233 S. W. 1065.] If such fiction of complete ownership in each was not cast asunder,

one or the other must take all the estate. Since that would be inequitable, the estate must be equally divided. In Rezabek v. Rezabek, 196 Mo. App. 673, 192 S. W. 107, it appears a husband and wife owned a leasehold by the entirety. At its expiration, under a renewal clause, the wife took the same in her own name. Several years afterwards the husband instituted proceedings in equity to have her declared a trustee for him as a tenant by the entirety for an accounting of one-half of the rents and profits accruing during the lease renewal. Relief was granted as prayed. Thus again, by a court of equity, the legal fiction was cast aside, for otherwise if the wife, strictly speaking, owned the entire leasehold at all times, there would be no basis for equitable relief. Yet, as shown, the husband's interest was declared and the profits of the lease divided equally.

Again, in Holmes v. Kansas City, 209 Mo. 513, 108 S. W. 9, it appears condemnation proceedings included an estate by entirety. The wife was not made a party and only the husband was served and appeared in the action. She later brought suit by injunction. It was held that she had such a separate interest in the property, apart from her husband, for the protection which, until she first had been compensated for her interest, the writ would lie. The court, in the course of its opinion therein, said (l. c. 526, et seq.):

"The point we are now making is that the wife had a substantial and recognized interest in the inheritance, and could maintain an action when injury was done thereto. Such is her interest that she, without joining her husband, can sue for the possession thereof as against all persons except the husband. . . . And such is her interest that 'divorce of the wife from the husband results in vesting in the wife her moiety.' [21 Cyc. 1201, and cases cited.] We have held in this State that the divorce of the wife from the husband gave her absolute title to her moiety, and that an action in partition would lie. So that we have no hesitancy in saying that Mrs. Holmes had such an interest in the property as demanded at the hands of the city just compensation before the property or any part thereof could be taken for a public purpose."

This ruling of our Supreme Court would also be without foundation if the fiction of husband and wife and complete ownership by each were true. If the husband owned it all and was served with process, it is clear the wife would have no interest compensable apart from the husband. So, again, when circumstances called for the application of equitable principles, the court ignored and refused to follow the legal fiction.

Defendant urges we are here concerned only with the general doctrine governing estates by the entirety; that upon the death of a co-tenant, the survivor takes no new or additional interest, but merely retains what he received by the original grant; that the wrong-

ful, murderous action of the husband is of no consequence in the determination of this cause. Such contentions not only run counter to the holdings in the above cases, but to the equitable rules hereinbefore quoted. The right of a court of equity, as noted, depends entirely on the nature of the controversy presented, irrespective, as a controlling element, of the nature of the previous or present status of the estate by entirety. We are therefore not in accord with defendant's contention that the right of appeal to a court of chancery is closed to the plaintiff, because of the fiction and theory of general survivorship. Defendant's position of attempted retention of the whole fund here in controversy could be justified only under the general rule, and we think, under the peculiar facts at bar, certain equitable principles must be given the widest application, and that the matters in issue should not be determined within the confines of the general rule. Conceding, but not deciding, that full legal title may pass to the husband by the fact of survivorship, yet, because of the unconscionable mode of its acquisition, a court of equity, as here, should and will treat him as a constructive trustee. In any event, with a view of rendering equity and justice and preventing one securing an advantage, benefit or property right through his own iniquitous act, an accounting should be had of one-half the value of the property, for which the plaintiff here petitioned. We think it follows where the husband by his willful, felonious act dissolves the marital relationship and as a consequence there is a severance of the estate by the entirety such property may well be treated as held by tenants in common. Dissolution of the marriage status by operation of law, that is to say, divorce, would vest in each an undivided one-half interest as tenants in common. [State ex rel. v. Ellison, supra.] Clearly then the rights of the husband, because of an act contrary to law and not by operation thereof, should rise no higher.

In this connection the language of our Supreme Court in Perry v. Strawbridge, 209 Mo. 621, 108 S. W. 641, is pertinent. There it appears a husband murdered his wife. She died without children. He then committed suicide. The heirs of the husband sought to recover certain property under the statute which gave to the widower one-half of the real and personal estate belonging to the wife. The question for determination there was whether a husband who murders his wife can inherit one-half of her estate. The court said (l. c. 629):

"Can it be said that one, by high-handed murder, cannot only make himself an heir in fact, when he had but a mere expectancy before, but further shall enjoy the fruits of his own crime? To us this seems abhorrent to all reason, and reason is the better element of the law. . . . (632) When we took unto ourselves the common law, as we did in 1816, and in later reiterations of that statute, we took the body of all the common law, which could be made ap-

plicable under our constitutions, State and Federal, and such is the law of the State except where repealed, changed or modified by statute. . . . It has been well said that there are certain general and fundamental maxims of the common law which control laws as well as contracts. Among these are: 'No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries.' These maxims embodied in the common law, and constituting an essential part of its warp and woof, are found announced both in text books and in reported cases. Without their recognition and enforcement by the courts their judgments would excite the indignation of all right-thinking people. The first of these maxims is applied in order to prevent one from taking the benefit of his own fraud. Why should not the last be enforced so as to forbid a party receiving the fruits of his own crime? . . .

"These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes. . . .

"Our revisers and lawmakers were familiar with the civil law, and they did not deem it important to incorporate into our statutes its provisions upon this subject. This is not a *casus omissus*. It was evidently supposed that the maxims of the common law were sufficient to regulate such a case and that a specific enactment for that purpose was not needed. . . . To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and felonious act of the devisee himself. And, in applying this rule, no distinction can be made between a death cause by murder and one caused by manslaughter. Nor does the common-law right of succession by descent operate in favor of one who willfully takes the life of his ancestor for the purpose of succeeding to his property rights. And the common-law right of a man to succeed to the property of his wife upon her death does not operate in favor of one who murders his wife."

The guiding principles there stated, because analogous to the facts attending the demise of the wife in the case at bar, prompted us to quote therefrom at length. It follows that the holding in that case that merely outliving the wife does not satisfy the conditions imposed by the common law relative to estates by entirety so that the survivor may take all. One must not only be a survivor *in fact* but also a survivor *in contemplation of law.* Indispensable is the prerequisite that the decease must be in the ordinary course of events and subject only to the vicissitudes of life. The killer can assert

no right of complete ownership as survivor. And no exception is made in favor of his heirs and representatives. Defendant's claim to all as administrator of the deceased husband is without legal basis as it is predicated upon the same producing cause—the murder of the co-tenant.

If James Washington and Cora Washington had died simultaneously then, obviously, James Washington could not be the widower of Cora, and defendant would not be entitled to more than one-half of the funds in question. Likewise, if the condition precedent to such status as lawful survivor cannot come into existence, then, also, the husband had no interest in excess of one-half the fund, to which his administrator could make claim. That James Washington was not the lawful widower and consequently a survivor in contemplation of law of the estate in question is sufficiently and clearly alleged in the petition. By its allegations there is negatived any possible conclusion to be drawn therefrom that defendant as administrator, under the circumstances stated, could receive and retain all of the funds. It is our opinion that the petition clearly states a cause of action, and the demurrer should have been overruled.

In each case decided by our courts, to which our attention has been called, where the theory of survivorship has been applied, and so far as our research discloses, the immediate question was in no wise involved. Apparently, as we have said, this case is one of first impression in the State. However, our view is directly supported by authorities elsewhere, where the courts, under similar facts, have gone even farther than we are asked to go herein. In North Carolina, in the case of Bryant v. Bryant, 193 N. C. 372, 137 S. E. 188, we find the court takes the view that while a homicide at common law does not prevent the legal title of an estate by entirety from passing to a criminal, equity acting *in personam* will compel the criminal to hold the acquired *res* as constructive trustee of the deceased, or his representative, even though the crime is not committed for the purpose of obtaining title. Further it was held therein that if the expectancy of the wife was greater than that of the husband, he would be held to be a constructive trustee of the entire property, for the benefit of the wife's heirs after his death.

3 Pomeroy's Equity Juris, secs. 1044, 1053, is quoted with approval, as follows (l. c. 377):

"Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title . . . They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in

hostility to his beneficial rights of ownership. . . . An exhaustive analysis would show, I think, that all instances of constructive trusts properly so called may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source. . . . If the legal title to property has been obtained through actual fraud, undue influence, or duress, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to it, although he may never have had the legal estate. . . . The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically. without limit. The principle is applied wherever it is necessary for the obtaining of complete justice. . . . That the principle should be applied in this class of cases, and the criminal held a constructive trustee of the fruits of his crime, seems too plain for argument."

And the court held in the Bryant case:

"In the application of this principle a court of equity will not deprive the appellant of his interest in the estate, but the appellant by his crime took away his wife's interest, and as to this he must be held a constructive trustee for the benefit of her heirs; . . . ."

See also Van Alstyne . v. Tuffy, 169 N. Y. Supp. 173, wherein it appeared that the husband murdered his wife and then took his own life. The court held the husband did not become seized of property held by them by the entirety, but by his act defeated the right to claim by the law of survivorship, and hence ruled that the estate descended to the legatees of the wife's will.

Holding contrary to the above is the case of Beddingfield v. Estill, 118 Tenn. 39, 100 S. W. 108. It seems to us sound reasoning is against this holding of the Tennessee court. We think sufficient weight was not given to the equitable maxims of the common law and principles underlying such estate.

In the case at bar we find the action of the trial court cannot be sustained for another reason. Cora Washington, the wife, had a vested interest to be divested by the happening of a condition subsequent, as also did her husband, James Washington. The legal representatives had only, what may well be termed in the disposition of this cause, a contingent interest in the whole estate, dependent upon the happening of the condition subsequent, namely, the divestiture of the interest of either by their lawful decease. Defendant, as the husband's representative is not entitled to all of said fund, as it appears the rights of the wife had not lawfully divested. Under the peculiar circumstances here present, neither divesture of interest nor survivorship exists in contemplation of law,

as to either. The fund should go just as provided where there is a common calamity and both tenants die simultaneously.

Under authority of Perry v. Strawbridge, supra, the husband could not qualify as the legal surviving widower. Therefore there is no survivor directly entitled to take, and the fund descends as if it were formerly held as tenants in common to be distributed according to the statute of descents. [30 C. J., 572; United States Casualty Co. v. Kacer, 169 Mo. 301, 310, 69 S. W. 370, 372.] We are also in accord with appellant's contention that the property should descend one-half to the heirs of James Washington and one-half to the heirs of Cora Washington.

Confining ourselves to the theory of the case as tried below, since plaintiff is seeking to recover only one-half of the fund in question, it logically follows, in consideration of the foregoing and our views as herein expressed, that the judgment must be reversed and the cause remanded with directions to set aside the order of dismissal, and for other proceeedings therein in accordance with this opinion. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.