**In the Matter of Thomas D. McCARTY, Deceased.**

No. 53458.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1988.

Julius H. Berg, St. Louis, John Ernest Hilton, Clayton, for appellant.

Gerald J. Zafft, St. Louis, for respondent.

STEPHAN, Judge.

This is an appeal from a court-tried action which disposed of four consolidated cases regarding the estate of Thomas D. McCarty, deceased. They are: 1) a probate action involving an application for widow's allowance and distribution of exempt property; 2) a partition suit involving the claimed rights of the widow and other heirs to certain property the widow had held with her husband; 3) an interpleader involving the widow's rights to insurance proceeds; and 4) a second interpleader involving the widow's rights to her husband's interest in certain certificates of deposit.

Thomas D. McCarty ("Decedent") and Betty Z. McCarty ("Appellant"), husband and wife, separated on or about November 15, 1982. Appellant filed for dissolution of marriage in the Circuit Court of St. Charles County, Missouri, where she resided.

On July 16, 1984, Officer Haun, of the Bridgeton Police, responded to a call to go to the decedent's home. He was met by appellant who told Haun she was moving back into the house. She wanted the police to keep the peace while another person, the housekeeper, was removed from the premises. The housekeeper left peacefully, and Haun left at approximately 11:45 a.m. Before he left, however, appellant told him she expected her husband to return at 4:00 p.m. at which time other problems would develop which would require the police to return.

Around noon, Frank Hesselmeyer, an employee of decedent's corporation, arrived at decedent's residence[1] and found appellant there. Appellant told Hesselmeyer she had turned the telephones off and fired the housekeeper. She was telling Hesselmeyer about her family problems when she picked up a shotgun from near the refrigerator and loaded it. She told Hesselmeyer that, if decedent attempted to hit her, she would shoot him. Hesselmeyer persuaded appellant to put the shotgun down and call the police.

The police were summoned again. Officer Haun and two other police officers arrived at approximately 12:30 p.m. Decedent arrived home at about the same time. At that time, the police did not notice any disturbance or conflict. After being assured there would be no further problems, the policemen left.

Gaylon Trentham, another employee, arrived at about 1:45 p.m. He met briefly with decedent regarding a business problem, then proceeded to work on his truck. Trentham noticed appellant's car and asked decedent why she was there. Decedent told him that appellant "was just there causing problems" and "trying to make his life miserable."

At approximately 2:15 p.m. Trentham noticed decedent's neighbor, Mr. Keevens, had returned. Trentham needed to talk with Keevens and started walking across a field toward the Keevens' house. While walking he heard what sounded like two shots, but he did not return to find out what the noise was.

A short while later, Trentham was returning to his truck when appellant came out of the house covered with blood and calling to him. Trentham entered the house and found decedent face down in a pool of blood. He was lying in the office area next to the kitchen. There was a trail of blood from the sink in the kitchen, moving along counters and cabinets, past the refrigerator and ending where he lay. Appellant followed Trentham in and kept repeating, "T.D. I know you didn't mean to, I know you didn't mean to." Trentham took the shotgun from the kitchen floor, and, upon discovering the phones were dead, went over to the Keevens' home and had Mrs. Keevens call the police.

Officer Haun again responded. Haun found the decedent lying on his stomach. Appellant was kneeling over him, trying to lift him up. She was hysterically screaming, "We have to get T.D. up. T.D. did not mean to throw the coffee cup at me."

Decedent was shot once in the upper right chest and once in the back. Death

---

1. The decedent's home also served as the office for his corporation.

was caused by massive hemorrhaging in the chest wound. The medical examiner testified that decedent probably received the chest wound first.

Appellant was charged with murder. She was convicted of manslaughter on October 9, 1985 and sentenced to nine years in prison. *State of Missouri v. Betty Z. McCarty*, Case No. 511558, in the Circuit Court of St. Louis County, Missouri. Her subsequent appeal to this Court was dismissed for failure to file the record on appeal. Cause No. 51102.

Both Anna Noble, decedent's sister, and appellant filed applications to be appointed personal representative of decedent's estate. A hearing was set for May 25, 1985. On that day, appellant nominated her sister to serve as personal representative, but the court appointed Anna Noble.

The estate and appellant stipulated and agreed that any decision of the Circuit Court with respect to the effect of appellant's manslaughter conviction on, (a) appellant's rights in the estate, (b) appellant's rights in the jointly held certificates of deposit and bank accounts which are the subject matter of the second interpleader suit filed by Community Federal Savings and Loan Association, (c) appellant's rights in the jointly held real estate and personal property, which is the subject of the partition action, and (d) appellant's rights to insurance proceeds which is the subject of the first interpleader suit, shall be determinative solely of appellant's legal rights with respect to all the pending matters hereinabove described.

On April 20, 1987, a hearing was held on all of the consolidated matters. The trial court entered its "Findings of Fact, Conclusions of Law, Judgment and Order." The trial court found that because appellant feloniously shot and killed decedent, she was not entitled to exempt property pursuant to § 474.250, RSMo 1986, or to the widow's allowance pursuant to § 474.260, RSMo 1986, and, therefore, denied appellant's motion for distribution of exempt property and application for payment of support allowance.

The trial court further found when appellant shot and killed decedent, the joint tenancy, with reference to the jointly held certificates of deposit and bank accounts, was severed and the property was converted to a tenancy in common. As the felonious killer of decedent, appellant was precluded from taking decedent's share of the commonly held property. Appellant's motion for pay out of the jointly held certificates of deposit and bank accounts was denied, and the estate's motion for pay out was granted.

The trial court then found that when appellant shot and killed decedent, the tenancy by the entirety, with reference to the real estate, and the joint tenancy with reference to the truck were converted to tenancies in common. It was held that appellant, as the felonious killer of decedent, could not take decedent's share of the commonly held property, and, therefore, appellant's motion for summary judgment, seeking a determination that she was the sole owner of the real estate and the truck, was denied.

Finally, the trial court held that appellant, having feloniously shot and killed decedent, forfeited her right to take as beneficiary under the insurance policies.

This appeal followed.

Appellant raises one principal issue on appeal. She contends that the trial court erred in entering its judgment because it is based on an erroneous declaration of law. The trial court only found that appellant feloniously killed decedent. Appellant contends that a widow is deprived of the right to inherit from her husband only when she feloniously and intentionally kills him.

The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it goes against the weight of the evidence or unless it erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will also affirm the judgment in a court-tried case even when the trial court assigns an incomplete or erroneous reason for the judgment. *Farm Bureau Mutual Insurance Company v. Broadie*, 558 S.W.2d 751, 753 (Mo.App.

1977). This is true whenever the judgment could have been reached on any reasonable theory. *Worlledge v. City of Greenwood,* 627 S.W.2d 328, 331 (Mo.App.1982).

■ The estate had the burden of showing appellant intentionally killed decedent. When proving crimes in a civil action it is only necessary to prove the crime by a preponderance of the evidence. It is not necessary to meet the criminal standard of proof beyond a reasonable doubt. *See, Hall v. Brookshire,* 364 Mo. 774, 267 S.W.2d 627, 632 (Mo. banc 1954); *State ex rel. Detroit Fire and Marine Insurance Company v. Ellison,* 187 S.W. 23 (Mo. banc 1916).

It is readily inferable from the evidence that the decedent was shot in the chest while standing in the kitchen. He staggered along past the cabinets and the refrigerator toward his office. He was shot a second time, in the back, causing him to fall forward into the office. In the opinion of the medical examiner, the initial shot was fired from a distance of six or seven feet and the shot in the back "was from a closer distance, roughly around five feet." This would clearly indicate that, after the decedent sustained the wound in his chest and turned in an effort to get into his office, appellant followed him to administer the second shot.

■ We find there were sufficient facts to support the finding that appellant intentionally killed her husband. A person who feloniously and intentionally causes the death of another cannot benefit by reason of that death. *Baker v. Martin,* 709 S.W. 2d 533, 534 (Mo.App.1986). *See also, Perry v. Strawbridge,* 108 S.W. 641 (Mo.1908); *In the Matter of the Estate of Julius Laspy,* 409 S.W.2d 725 (Mo.App.1966). This rule includes exempt property and the widow's allowance, *Laspy,* 409 S.W.2d at 730; property held as tenants by the entirety or as tenants in common, *Barnett v. Couey,* 224 Mo.App. 913, 27 S.W.2d 757, 761 (1930); and, life insurance proceeds, *Wells v. Harris,* 414 S.W.2d 343, 346 (Mo.App.1967) aff'd on rehearing, 434 S.W.2d 783 (Mo. App.1968).

In an argument ancillary to the principal point, appellant contends that the trial court erred in excluding as hearsay certain testimony of DePaul Hospital's assistant supervisor for safety and security, Daniel Benson. Appellant had been taken to the hospital after the shooting, apparently because of her "upset" emotional state. When Mr. Benson was asked what appellant said to him concerning the events leading up to her admission to the hospital, counsel for the estate objected on the ground of hearsay, and the objection was sustained. Appellant's counsel made an offer of proof that Mr. Benson would testify that appellant told Mr. Benson the gun had gone off by accident and that she did not intend to injure her husband. Although appellant's statements to Mr. Benson were made an hour and fifteen minutes after the shooting, appellant contends that they were admissible under the "excited utterance" exception to the hearsay rule because she was still under the stress of excitement occasioned by the killing.

We need not decide the applicability of the "excited utterance" exception here, for as this Court said in *Iota Management Corp. v. Boulevard Investment Company,* 731 S.W.2d 399, 416 (Mo.App.1987), "Reversible error based on the rejection of evidence is not an issue on appeal in any court-tried case." The question is whether the evidence should have been admitted or rejected and what the judgment of the court should be in view of the competent and admissible evidence. *C.E.E. v. Juvenile Officer,* 727 S.W.2d 451, 453 (Mo.App. 1987); *Thau–Nolde, Inc. v. Krause Dental Supply & Gold Co., Inc.,* 518 S.W.2d 5, 9 (Mo.1974).

■ Assuming that Mr. Benson's testimony to the effect that appellant told him the shooting was an accident should have been received, appellant's statement to that effect borders on the utterly incredible. As discussed above, the evidence convincingly established that appellant shot her husband in the chest from a distance of six or seven feet. When he turned away from her, she shot him again. Such facts are

not consistent with and are totally contradictory of any theory of "accident."

We, therefore, find that the trial court ruled correctly in denying appellant's various motions. The fact that the trial court neglected to use the word "intentionally" is of no consequence because the resulting judgment was correct. *Worlledge*, 627 S.W.2d at 331.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.