In the Estate of Raymond
H. LYNN, Deceased.

Mary LYNN, Respondent,

v.

Linda LYNN, Personal Representative of
the Estate of Raymond H. Lynn,
Deceased, Appellant.

No. 19444.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 3, 1995.

Keith D. Sorrell, Spain, Merrell and Miller, Poplar Bluff, for appellant.

John R. Hopkins, Jr., Edmundson, Terando, Hopkins & Ellis, Poplar Bluff, for respondent.

CROW, Judge.

Appellant, Linda Lynn, Personal Representative of the Estate of Raymond H. Lynn, Deceased, appeals from an order allowing a claim by Mary Lynn ("Claimant") against the estate. Appellant's sole point relied on presents an issue of first impression. The pertinent facts are undisputed.[1]

Claimant was once the wife of Raymond H. Lynn ("Decedent"). Their marriage was dissolved by a decree signed September 14, 1992. The decree awarded Claimant: (a) sundry property, (b) $1,000 as "partial attorneys fee," and (c) $300 per month maintenance.

Decedent died intestate on February 7, 1993.

On August 12, 1993, Claimant filed a $6,269.19 claim against Decedent's estate. The claim had several components, among which were the attorney fee awarded by the decree, unpaid maintenance, and money due from the sale of property awarded Claimant by the decree. The parties agree: "All of [Claimant's] requests for relief are grounded in the divorce decree."

Appellant filed an answer to the claim. The answer pled, *inter alia:*

"... claimant ... is not entitled to ... file her claim against the Estate ... by reason that the claimant participated in causing the death of Raymond Lynn. The claimant's unlawful actions act as a bar and an offset to whatever claim that she might assert against the Estate...."

---

1. The statement of facts in Appellant's brief is adopted by Claimant in her brief. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon,* 295 S.W.2d 117,

119[1] (Mo.1956); *Thornbury v. Morris Oil Company, Inc.,* 846 S.W.2d 238, 239[1] n. 2 (Mo.App. S.D.1993). Consequently, although the record does not appear to confirm all of the facts upon which the parties agree, we need not concern ourselves about that.

In her brief, Appellant characterizes the above allegation as "the affirmative defense." For convenience, so shall we.

The parties stipulated in the trial court that Claimant maintained the affirmative defense could not, as a matter of law, be raised by the estate. The parties asked the trial court to decide that issue.

The trial court, in a thoughtful three-page memorandum, analyzed several cases and, treating the issue as a motion by Claimant to strike the affirmative defense from Appellant's answer, granted the motion.

The parties thereafter filed a stipulation in the trial court stating, in pertinent part:

"... the Estate would not present any other defenses to the claim of [Claimant] ... other than the defense of [her] possible participation in the decedent's death. The Estate concedes that the amounts claimed by [Claimant] are yet unpaid.

Therefore, the Estate stipulates that the Court may rule on the claim of [Claimant] based upon the pleadings of the parties in this case."

The trial court thereupon entered the order referred to in the first sentence of this opinion, awarding Claimant the $6,269.19 she demanded.

Appellant's lone point relied on reads:

"The trial court erred in striking the affirmative defense raised by the Estate ... because the Estate's affirmative defense that [Claimant's] claim should be barred or offset due to her participation in causing [Decedent's] death stated a defense upon which relief could be granted in that section 473.407, R.S.MO. (1955) allows the personal representative to raise equitable and legal defenses that would offset or bar [Claimant's] claim."

Section 473.407, RSMo 1986, cited in Appellant's point, reads:

"Any ... administrator may assert the same offsets and other defenses against any suit or other proceeding instituted against the estate of his ... intestate which he might have made in his lifetime."

■ The question we must decide is carefully framed in Appellant's brief:

"The issue in this case concerns whether an estate can raise the claimant's participation in causing the death of the decedent as a defense to a monetary claim that arose independent of the death.

The claim [is] for unpaid obligations that arose from a divorce decree. [Appellant is] not appealing either the amounts contained in the claim or whether they have been paid.

The trial judge ruled that the Estate's affirmative defense should be stricken. That ruling effectively prohibited the Estate from putting evidence before the Court that [Claimant] caused the death of [Decedent]."

Appellant concedes she, in her capacity as personal representative, cannot bring a wrongful death action against Claimant for Decedent's death. Nonetheless, argues Appellant, she, in her representative capacity, is allowed by § 473.407 (quoted *supra*) to assert the affirmative defense against Claimant.

Missouri cases have consistently barred those who intentionally kill from receiving anything from the victims' assets.

In *Perry v. Strawbridge*, 209 Mo. 621, 108 S.W. 641 (1908), a man murdered his childless wife, then committed suicide. The murderer's children (by another woman) claimed the murderer had inherited half the victim's property by reason of a statute which read: "When a wife shall die without any child or other descendants in being capable of inheriting, her widower shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death...." 108 S.W. at 645. The murderer's children insisted they were entitled to the half of the victim's estate which the murderer inherited.

The Supreme Court of Missouri disagreed, noting the common law maxim that no one shall be permitted to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. *Id.* at 644. The Supreme Court held the common law was part of the law of succession, hence the statute under which the murderer's children claimed had to be construed in harmony with the common law. *Id.*

at 645. Accordingly, the Supreme Court ruled:

> " 'Widower' as ... used [in the statute] means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and not one who, by felonious act, has himself created that condition."

*Id.* at 648.

*Perry* was applied 58 years later by *In re Estate of Laspy,* 409 S.W.2d 725 (Mo.App. 1966), where a wife was convicted of voluntary manslaughter in causing her husband's death and filed a claim against his estate for a statutory widow's allowance of one year's support plus cash in lieu of specific personal property. The widow maintained *Perry* did not bar her claim because the killing in *Perry* was murder, whereas she was convicted of only manslaughter. *Id.* at 730. The appellate court rejected that argument, holding that the widow could qualify for the statutory benefits only if she had become a widow by the ordinary and usual vicissitudes of life and not by a felonious act which created that condition. *Id.* The court cautioned it was not deciding whether the widow's claim would be barred had she been convicted of "unintentional, accidental, involuntary manslaughter or manslaughter caused by culpable negligence." *Id.* at 731.

Twenty years after *Laspy,* this Court cited *Perry* and *Laspy* in holding that a widow convicted of conspiracy to commit capital murder of her husband was barred from invoking § 474.160, RSMo 1978, to take a portion of his estate against his last will and testament. *In re Estate of Danforth,* 705 S.W.2d 609 (Mo.App.S.D.1986).

Three months after *Danforth,* this Court, citing *Perry, Laspy* and *Danforth,* held that a devisee who murdered the testatrix was not "a survivor in contemplation of law," hence he could not take the share of the estate devised to him. *Baker v. Martin,* 709 S.W.2d 533, 536 (Mo.App.S.D.1986). The opinion noted the holding in *Barnett v. Couey,* 224 Mo.App. 913, 27 S.W.2d 757 (1930), that a tenant by the entirety who murders the other tenant does not acquire the victim's share of their property. *Baker,* 709 S.W.2d at 534. The opinion in *Baker* also noted the holding in *Wells v. Harris,* 434 S.W.2d 783 (Mo.App.1968), that a beneficiary of a life insurance policy who intentionally kills the insured is barred from claiming the policy proceeds. *Baker,* 709 S.W.2d at 534.

In *Matter of McCarty,* 762 S.W.2d 458 (Mo.App.E.D.1988), a widow who intentionally killed her husband was barred from receiving (1) a widow's allowance and exempt property from the victim's estate, (2) the victim's share of property held by him and her as joint tenants, (3) the victim's share of property held by him and her as tenants by the entirety, and (4) insurance proceeds. *Id.* at 460. *McCarty* relied on *Perry, Laspy, Baker, Barnett* and *Wells.* 762 S.W.2d at 461.

Claimant acknowledges killers' efforts to benefit from their victims' deaths have been uniformly unsuccessful in Missouri. However, Claimant points out that unlike the cases cited earlier in this opinion, her claim against Decedent existed before his death; her claim did not arise as a result of his death. Decedent owed Claimant $6,269.19 immediately before he died. The debt remained unchanged after he died.

Consequently, says Claimant, she did not benefit by Decedent's death; hence, the principle that no one shall be permitted to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime, does not bar her claim.

Furthermore, Claimant maintains § 473.407 (quoted *supra*) does not permit Appellant to raise the affirmative defense in that the statute allows a personal representative to assert only "the same offsets and other defenses" which the deceased could have asserted in his lifetime. Claimant says Decedent could not have pled the affirmative defense against her claim had he survived.

Six of the seven cases discussed earlier in this opinion are cited in Claimant's brief. Claimant cites no other case. Thus, all of the cases cited by Claimant are cases where the killer lost. Claimant cites no case where the killer won.

Careful study of the seven cases we have discussed reveals the courts reached their

decisions by sundry routes, varying with the nuances of each case. Nonetheless, all seven were steadfast in barring the killer from taking anything from the victim's assets. The six cases after *Perry* all manifested, to some degree, the concern articulated in *Perry* that it would be abhorrent to all reason, and repugnant to common right and common decency, to allow the killer to recover. 108 S.W. at 642. While the rationale by which the cases reached their respective results might not in all instances be characterized as unassailable logic, the cases were consistent in their resolve that the law will not countenance recovery by the killer.

We agree with Claimant that the instant case differs from the previous ones in that her claim existed before Decedent died. However, we are unconvinced that this difference is significant enough to compel departure from the line of cases that began with *Perry* in 1908 and developed unrelentingly during the ensuing 86 years.

Admittedly, Claimant's contention that she did not benefit by Decedent's death appears, on its face, irrefutable. However, her claim reveals that after the dissolution decree she collected none of (1) the monthly maintenance, (2) the attorney fee, or (3) the money allegedly due from the sale of property awarded her. Whether her failure to collect items "(2)" and "(3)" was attributable to the exemptions from execution in § 513.430, RSMo Cum.Supp.1992, and § 513.475, RSMo 1986,[2] is unshown by the record.

The record does disclose that the probable value of Decedent's assets exceeds $114,000, far more than the aggregate amount of claims against the estate (including Claimant's). The record further indicates there is no one entitled to exempt property, § 474.250, RSMo 1986, a year's support, § 474.260, RSMo 1986, or a homestead allowance, § 474.290, RSMo 1986.[3] It thus appears the estate has sufficient assets to pay Claimant's claim. Consequently, if the affirmative defense is disallowed, it is arguable that Claimant has benefitted from Decedent's death to whatever extent that collection of her claim has become easier. That offends the long-standing principle that no one shall be permitted to take advantage of his own wrong.

We therefore hold Appellant is entitled to plead, as a defense to Claimant's claim, that Claimant intentionally killed Decedent, or acted with another in intentionally killing Decedent, or employed, aided or encouraged another in killing Decedent.[4]

As did the court in *Laspy*, 409 S.W.2d at 731, we emphasize we are not deciding whether Claimant's claim would be barred if she killed Decedent unintentionally, accidentally, or by culpable negligence. As we comprehend the record and briefs, Appellant makes no such contention.

We find it unnecessary to decide whether the affirmative defense is among those allowed by § 473.407. That statute merely ensures that a personal representative may assert any offset or defense that the deceased could have raised in his lifetime. It does not bar any other valid defense.

The order appealed from is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

GARRISON, P.J., concurs.

PARRISH, J., dissents and files dissenting opinion.

PARRISH, Judge, dissenting.

I respectfully dissent.

I do not agree that the principle that one cannot benefit from his or her wrongful act applies in this case. The probate claim sought collection of debts established prior to the death of claimant's ex-husband. Those debts were not created by reason of his

---

2. No property is exempt from execution to enforce a decree for maintenance. § 452.140, RSMo 1986; *Rusk v. Rusk*, 859 S.W.2d 751, 752–54[1] (Mo.App.E.D.1993).

3. The application for letters of administration lists no surviving spouse or minor children.

4. Appellant's reply brief indicates Claimant's alleged role in Decedent's death was hiring his killer.

death.  I believe this distinguishes this case from those cited in the majority opinion.  I would affirm.