**Justin A. THOMAS, Administrator of the Estate of Judith Ann Dewald, a/k/a Judy Ann Dewald, deceased, Justin A. Thomas, Timothy Kingery, and Wesley Kingery, individually, Plaintiffs–Appellants,**

v.

**William J. EVANS and Carolyn Evans, Personal Representatives (Administrators with will annexed) of the Estate of Ronald P. Dewald, deceased, Defendants–Respondents.**

No. 21192.

Missouri Court of Appeals, Southern District, Division Two.

April 7, 1997.

■

---

**6.** We searched for a Missouri case supporting such a hypothesis, but found none.

requested the court to declare Respondents "constructive trustees for the benefit of the estate of Judith Ann Dewald ... deceased, and [the individual Appellants], as heirs of Judith Ann Dewald ... deceased, as to all such property she would have inherited from the estate of Ronald P. Dewald ... the same as if she had survived him...."

Respondents subsequently filed a motion for summary judgment. At a hearing on the matter, the trial court concluded that Respondents' motion was actually a motion to dismiss for failure to state a claim and dismissed the petition. Appellants appeal from that ruling.

A petition is sufficient to withstand a motion to dismiss for failure to state a claim if it invokes principles of substantive law which entitle the plaintiff to relief. *Empiregas, Inc. of Rolla v. Whitson*, 902 S.W.2d 347, 348 (Mo.App.1995). In assessing the sufficiency of a petition, we accept all properly pleaded facts as true, give them a liberal construction, and draw all reasonable inferences which are fairly deducible from the pleaded facts. *Murphy v. A.A. Mathews*, 841 S.W.2d 671, 672 (Mo. banc 1992). Thus, proper analysis of the claim requires the following summary of the pleaded facts.

Ralph W. Gilchrist, Bolivar, for appellants.

Robert M. Sweere, Springfield, for respondents.

MONTGOMERY, Chief Judge.

Ronald Dewald and Judith Dewald, formerly Johnson, were married little more than a month before Ronald killed Judith and then committed suicide.[1] Justin A. Thomas, personal representative of Judith's estate, and Justin A. Thomas, Timothy Kingery, and Wesley Kingery, individually, Judith's heirs, filed a Petition in Equity for Declaratory Judgment against William J. Evans and Carolyn Evans, personal representatives of the Estate of Ronald P. Dewald.[2] Maintaining that equity requires the court to treat the murdered Judith as the survivor of Ronald so that she could take under his will, Appellants

On August 6, 1993, Ronald and Judith were married. On September 9, 1993, Ronald murdered Judith and then killed himself. The petition states that Ronald "may have survived [Judith] in fact, but not in contemplation of law." At the times of their deaths, Ronald and Judith were 53 and 52 years old, respectively. Prior to his death Ronald executed his Last Will and Testament. This document was admitted to probate on September 22, 1993. According to the terms of Ronald's will, if Judith survived him by thirty days, she would receive all of his personal property, as well as one-half of the proceeds from the sale of his real estate if both she and his mother, Mabel A. Robbins, survived him. In the event Ronald's mother predeceased him, Judith would receive all of the proceeds from the sale of his real estate.

1. For clarity only, we refer to the decedents by their forenames.

2. We refer to the parties collectively as Appellants and Respondents.

On September 22, 1993, Respondents were granted letters testamentary and appointed personal representatives of Ronald's estate. Respondents subsequently took charge of all of Ronald's personal property and real estate.

The petition alleges that if Ronald had not murdered Judith, her life expectancy would have been greater than his. The petition states that "by reason of such murder [Ronald] enriched himself and came into possession and control of his entire estate, which except for his wilful and wanton killing of Judith Ann Dewald prior to him killing himself would have passed to Judith...." Continuing, the petition alleges:

> That in equity, good conscience, and in contemplation of law, the said Ronald P. Dewald, and those under him, should not be permitted to enrich himself and themselves by reason of the murder of[ ] Judith.... Further, the said Ronald P. Dewald and those claiming under him should not be permitted and allowed to profit by his wrongdoing, nor succeed to the property of his estate.
>
> ... [E]quity should declare [Judith] to be [Ronald's] survivor and entitled to receive the property given, devised and bequeathed to her under the terms and provisions of [Ronald's will] as if she survived him.... [3]

In conclusion, the petition alleges that "legal title to the property of the estate of Ronald P. Dewald has been obtained by and through the unlawful act of Ronald ... making it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest through ... Ronald ... and the heirs and Estate of Judith ... should have impressed a constructive trust upon the property of the estate of Ronald ... thus acquired, in favor of the ones who are truly entitled to it, although ... Judith ... never had the legal estate."

Appellants' lone point relied on asserts their petition did state a cause of action based on the substantive principle of law that when one spouse murders the other spouse and then commits suicide, the murderer is not a survivor in contemplation of law and the trial court can equitably grant the heirs of the murdered spouse their proportionate share of the murderer's estate, the same as if the murdered spouse had survived the murderer or the same as if they had died simultaneously.

Appellants' claim is based on the common law maxim that no one shall be permitted to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. *Estate of Lynn*, 890 S.W.2d 694, 695 (Mo.App.1995). Said another way, "one who intentionally and feloniously causes the death of another cannot acquire property by reason of that death." *Baker v. Martin*, 709 S.W.2d 533, 534 (Mo. App.1986).

Application of this principle is found in the following Missouri cases.

[A husband] who murders [his wife] cannot take by intestate distribution. *Perry v. Strawbridge*, 209 Mo. 621, 108 S.W. 641 (1908). A surviving spouse guilty of voluntary manslaughter of her husband is barred from receiving a year's support and exempt personal property from his estate. *In Re Estate of Laspy*, 409 S.W.2d 725 (Mo.App.1966). A surviving spouse guilty of a successful conspiracy to murder a husband may not elect to take against his will. *In Re Estate of Danforth*, 705 S.W.2d 609 (Mo.App.1986). When a tenant by the entirety murders his co-tenant, the estate is converted to a tenancy in common and the felonious tenant may not take the deceased co-tenant's share. *Barnett v. Couey*, 224 Mo.App. 913, 27 S.W.2d 757 (1930). A beneficiary who intentionally and feloniously causes the death of an insured may not take under a policy of insurance. *Wells v. Harris*, 434 S.W.2d 783 (Mo.App.1968); *Hopkins v. Metropolitan Life Ins. Co.*, 151 S.W.2d 527 (Mo.App. 1941). Further, one holding a reversion may not acquire fee simple title upon in-

---

**3.** Appellants' petition alleges only that Judith should take under the provisions of Ronald's will. It does not refer to any statutory rights of a surviving spouse such as those found in §§ 474.160, 474.250, 474.260 and 474.290. Any rights Judith had under these provisions are not an issue in this case.

tentionally and feloniously causing the death of the holder of the conditional estate. *Eisenhardt v. Siegel,* 343 Mo. 22, 119 S.W.2d 810 (1938).

709 S.W.2d at 534.

In *Estate of Lynn,* this Court recently applied the above principle to a situation involving a claim by an ex-wife against the estate of her murdered ex-husband. Ex-wife's claim was founded on unpaid obligations arising from their divorce decree. We held that ex-husband's estate could raise ex-wife's participation in causing ex-husband's death as a defense to ex-wife's monetary claim which arose independent of his death. 890 S.W.2d at 697.

Thus, it can be seen that Missouri courts have consistently barred murderers from receiving any benefit from their victim's assets. However, that factual situation does not exist in the instant case.

■ The parties do not cite, nor has our own research uncovered, a Missouri case which has considered the status of a devisee intentionally killed by a testator who immediately thereafter commits suicide. The unique twist in this case arises from the fact that testator solely owned all the property in question prior to the devisee's death. Importantly, this case does not involve any type of joint tenancy or tenancy by the entirety property, which is the situation in many of the reported cases.

In support of their position, Appellants rely on three cases, *Perry v. Strawbridge, supra; Barnett v. Couey, supra;* and *Grose v. Holland,* 357 Mo. 874, 211 S.W.2d 464 (1948).

In *Perry,* a man murdered his childless wife and then committed suicide. The murderer's children from a previous marriage claimed the murderer had inherited one-half of the victim's property by reason of a statute which read: "When a wife shall die without any child or other descendants in being capable of inheriting, her widower shall be entitled to one-half of the real and personal estate belonging to the wife at the time of her death...." 108 S.W. at 645. Our Supreme Court held the common law was part of the law of succession, therefore, the statute under which the murderer's children claimed had to be construed in harmony with the common law. *Id.* at 645. The Supreme Court ruled:

> [Widower] as ... used [in the statute] means one who has been reduced to that condition by the ordinary and usual vicissitudes of life, and not one who, by felonious act, has himself created that condition.

*Id.* at 648.

In *Barnett,* the husband murdered his wife and then committed suicide. They owned certain bank funds as tenants by the entirety. The husband's estate claimed ownership of all the funds based on his survivorship. Relying on the views expressed in *Perry,* the appellate court held:

> The killer can assert no right of complete ownership as survivor. And no exception is made in favor of his heirs and representatives. Defendant's claim to all, as administrator of the deceased husband, is without legal basis as it is predicated upon the same producing cause—the murder of the cotenant.

27 S.W.2d at 761. The court then determined that the "fund should go just as provided where there is a common calamity and both tenants die simultaneously." *Id.* at 762.

In *Grose,* the husband killed his wife and was convicted of murder. They owned certain real estate as tenants by the entirety. Husband claimed sole ownership of the real estate because he survived his wife. The Supreme Court denied his claim with reliance on *Barnett* and *Perry.* The Court held "[t]he killer can assert no right to complete ownership as survivor. Equity will not allow him to profit by his own crime." 211 S.W.2d at 467. Accordingly, the Court determined that one-half of the property should go to the heirs of the murdered wife and the other one-half to the murderer.

The cases cited by Appellants are factually unlike the present case in at least one important aspect. In each of the three cases, the killer, or those claiming under him, stood to benefit from the killer's wrongful and felonious act. Here, Ronald gained nothing from Judith's death because he owned all the property in question prior to her death.

Thus, Appellants have failed to plead a necessary element for equitable relief, i.e., the acquisition of "a practical, substantial benefit by [Ronald's] act." *Grose,* 211 S.W.2d at 466.

However, Appellants attempt to supply the "benefit" element by suggesting that Ronald's "legatees and devisees purportedly benefit from his felonious act as [Judith] and her legal representatives are eliminated from his Last Will and testament." This Court rejected a similar contention in *Baker v. Martin, supra.*

There, the testatrix devised the residue of her estate to her stepson, Robert Scott Martin, Robert Scott Martin, Jr., and Shannon Earl Martin (sons of Robert Scott Martin). Robert Scott Martin was convicted of the capital murder of the testatrix. The trial court declared the residue passed to the sons of Robert Scott Martin. The heirs-at-law of the testatrix appealed.

As to one of their contentions, this Court held as follows:

> The appellant heirs also contend the surviving two named persons cannot take because they are children of the murderer. They argue that under several hypothetical circumstances benefit would thereby accrue to the murderer, Robert Scott Martin. However, under the law of this state, Robert Scott Martin, Jr. and Shannon Earl Martin do not take an interest that passed through their father. Robert Scott Martin, Jr. and Shannon Earl Martin take as devisees of the testatrix. The appellant heirs concede the only reason for disqualification of those devisees is their relationship to Robert Scott Martin. "[N]o conviction can work corruption of blood or forfeiture of estate; . . . ." Mo. Constitution, Art. I, § 30. The relationship of those devisees to their father cannot forfeit an otherwise vested estate. *Perry v. Strawbridge, supra.*

709 S.W.2d at 536.

*Baker* determines that a murderer's sons, who have an otherwise vested estate, are not disqualified from inheriting by reason of their relationship to the murderer, even though the murderer allegedly benefitted in

some manner. A contrary holding, according to *Baker,* would unconstitutionally work a forfeiture of the devisee's vested estate.

Appellants seek to disqualify Ronald's heirs and devisees from taking Judith's share under the will because they are heirs and devisees of the murderer. Admittedly, Ronald's heirs and devisees take directly from him, which distinguishes this case from *Baker.* However, Ronald's ownership of all property in question was vested before he murdered Judith. Her death did not create any property interest in Ronald which would pass to his heirs and devisees. Therefore, we believe *Baker* supports the result we reach in this case.

Based on the views expressed in *Perry,* as well as in *Baker,* we hold that Ronald's criminal act did not result in a forfeiture of his own property as to him or those claiming through him. In *Perry,* the Supreme Court held that "widower" as used in the statute, earlier quoted, does not mean "one who has created a condition by murderous hands and heart." 108 S.W.2d at 648. The Court further determined that such construction did not violate the Missouri constitutional provision relating to corruption of blood or forfeiture of estate (now Missouri Constitution, Art. I, § 30).

On this issue, the Court said:

> This construction of the existing statute . . . does not violate our constitutional provision. There is no forfeiture of an estate which he has, but is simply preventing him from acquiring property in an unauthorized and unlawful way, i.e., by murder. It takes nothing from him, but simply says, "you cannot acquire property in this way." Nor does such a statute prevent his heirs from inheriting through him property rightfully his, at the time of his demise. The state cannot by law take a criminal's property, but it can say to every individual citizen, "you cannot acquire property by designated unlawful means." [4]

*Id.*

Application of these principles in this case can only mean that Ronald suffered no forfei-

---

4. We believe, constitutionally speaking, this language in *Perry* means that a murderer suffers no

ture of his property after killing Judith. According to *Perry*, Ronald's act (1) took nothing from him, but it would have prevented him from acquiring property from Judith, and (2) his act did not prevent his heirs from inheriting Ronald's rightfully owned property at the time of his demise.

Acceptance of Appellants' theory, as pleaded, would work a prohibited forfeiture regarding Ronald's heirs or devisees as they are entitled to inherit his rightfully owned property. Judith's right to inherit under the will was conditioned upon her outliving Ronald. Upon the failure of that condition, Ronald's heirs and devisees had a vested estate. Based on the foregoing, Appellants' petition fails to state a cause of action.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

forfeiture of his estate by reason of his crime. If Ronald had continued living after Judith's murder, he would have suffered no forfeiture of his property. We cannot accept Appellants' position that Ronald's innocent heirs and devisees should suffer a forfeiture when the murderer, if living, would not have done so.